UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| URETEK (USA), INC., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-cv-3746 |
| | § | |
| CONTINENTAL CASUALTY COMPANY, | § | |
| | § | |
|     Defendant. | § | |

**MEMORANDUM AND ORDER**

Parties in this insurance coverage dispute call upon the Court to resolve, as a matter of Texas law, whether Defendant Continental Casualty Company had a duty to defend Plaintiff Uretek (USA), Inc. on counterclaims alleged in a now-concluded patent infringement lawsuit. The Court finds that no duty to defend was triggered. Defendant's Motion for Summary Judgment (Doc. No. 20) is **GRANTED**; Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **DENIED**. Final judgment will issue separately.

**I.    BACKGROUND**

The facts of this case are uncontested. Uretek (USA), Inc. ("Uretek") is in the business of performing roadway repair and maintenance for various state and municipal agencies. On or around August 18, 2011, Uretek sued a competitor—Applied Polymerics, Inc. ("Applied")—in the Eastern District of Virginia for infringement of a patent on which Uretek held an exclusive license. (Doc. No. 1, at 1-4, *Uretek USA, Inc. v. Applied Polymerics, Inc.*, Civil Action No. 11-cv-542-JRS, Eastern District of Virginia.) The patent—which will be referred to herein as "the '831 Patent"—protected a particular pavement-lifting process. (*Id*. at 2-3.) Applied countersued on September 29, 2011 (the "Applied Countersuit"). Applied asserted three counterclaims

against Uretek: (1) false representation under the Lanham Act; (2) monopolization and attempted monopolization under the Sherman Act; and (3) unfair and deceptive trade practices under North Carolina state law. (Doc. No. 17-2, at 8-12.) The gravamen of the Applied Countersuit was that Uretek had knowingly misrepresented to competitors and customers that certain road repair and maintenance contracts were covered by the '831 Patent, and that these misrepresentations were intended to and did have an anti-competitive effect. (*Id*. at 7-12.)

At the time that Applied countersued, Uretek had a general liability policy (the "Policy") with Continental Casualty Company ("Continental"), which obligated Continental to defend Uretek against certain suits seeking damages from "personal and advertising injury." (Doc. No. 17-1, at 12.) Uretek demanded that Continental defend it in the Applied Countersuit. Continental refused. (Doc. No. 17-4, at 1-2.) This lawsuit followed.

## II. ANALYSIS

The parties dispute whether Continental had a duty to defend Uretek against Applied's counterclaims. They agree that Texas law provides the answer. "Under Texas law, whether an insurance carrier owes a duty to defend under an insurance policy is a purely legal question." *Blanton v. Continental Ins. Co.*, 565 Fed. Appx. 330, 333 (5th Cir. 2014).

Texas is an "eight corners" state, which means that Continental's duty to defend is controlled by (1) the four corners of the Applied Countersuit, and (2) the four corners of the Policy. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012). In its "eight corners" review of the Applied Countersuit, the Court looks to the "*facts* alleged . . . rather than the legal theories." *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 745 (5th Cir. 2011) (emphasis original). The truth or falsity of the factual allegations is irrelevant. *Id*.; *see also GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006).

Uretek bears the initial burden of establishing coverage under the terms of the Policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). In this analysis, Texas law twice weights the scales in favor of coverage. Specifically, if the Applied Countersuit "'does not state facts sufficient to clearly bring the case within or without the coverage,'" Continental will be found obligated to defend because "'there is, potentially, a case under the complaint within the coverage of the policy.'" *Nat'l Cas. Co. v. Western World Ins. Co.*, 669 F.3d 608, 612–13 (5th Cir. 2012) (quoting *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997)). Similarly, if there is ambiguity in the Policy relevant to the scope of Continental's duty to defend, it must be resolved in favor of coverage. *See Gilbert*, 327 S.W.3d at 133 ("Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage.").

The Policy at issue provides coverage for defense of lawsuits seeking damages for "personal and advertising injury." (Doc. No. 17-1, at 12.) Elsewhere, it defines "personal and advertising injury:"

> "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:
>
> . . .
>
> d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
>
> . . .
>
> f.  The use of another's advertising idea in your "advertisement;" or
>
> g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

(*Id.* at 20.) Uretek raises three arguments regarding coverage of the Applied Countersuit under the Policy. None offers a credible reading of both the Countersuit and the Policy.

First, Uretek argues that coverage is triggered by Applied's allegation that "Uretek disparaged the services of Applied and others." (Doc. No. 17, at 7.) It attempts to correlate these purported allegations with the Policy's definition of personal and advertising injury as injury arising from oral or written publication of material that "disparages a person's or organization's goods, products, or services." (*Id.* at 7-10.) The argument fails, however, because it is bottomed on a mischaracterization of Applied's factual allegations. Applied never alleged that Uretek disparaged a particular competitor's services to a third party. Rather, Applied alleged that Uretek attempted to mislead competitors and contracting bodies as to the scope of Patent '831 in order to discourage competitors from bidding on pavement-lifting projects and to coerce contracting bodies into believing that Uretek was their sole legal choice for service provider. (*E.g.*, Doc. No. 17-2, at 7-8.) As alleged, these "false and misleading" statements concerned Uretek's own services and patent. The Court agrees with Continental that deceptive statements regarding the scope of the '831 Patent cannot be construed as disparagement of *Applied's* services. *See KLN Steel Prods. Co., Ltd. v. CNA Ins. Cos.*, 278 S.W.3d 429, 439-40 (Tex. App.—San Antonio 2008, pet. denied) (finding plaintiff in underlying case asserted no disparagement claim because defendant's alleged misrepresentations were about its own product); *see also Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 297 (Cal. 2014) ("A false or misleading statement that causes customer confusion, but does not expressly assert or clearly imply the inferiority of the underlying plaintiff's product, does not constitute disparagement.").

The Court's conclusion is grounded, as it must be, in the specifics of the Applied Countersuit. If Applied had alleged that Uretek told customers that Applied had infringed the

'831 Patent, the Court would agree that the alleged communication constituted "disparage[ment]" under the Policy and triggered CCC's duty to defend. *See Amerisure Ins. Co. v. Laserage Tech. Corp.*, 2 F. Supp. 2d 296, 304 (W.D.N.Y. 1998) ("It seems obvious to this Court that wrongfully asserting that a competitor's product infringes patents clearly defames the competitor and disparages his product."). But the Applied Countersuit did not allege or imply that Uretek ever invoked the name or services of any competitor in its communications with customers. And Texas law is clear that the Court may not "'read facts into the pleadings'" or "'imagine factual scenarios which might trigger coverage.'" *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (quoting *Guar. Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000)); *see also Nationwide Mut. Ins. Co. v. Gum Tree Prop. Mgmt., L.L.C.*, No. 14-60302, 2015 WL 170244, at *5-6 (5th Cir. Jan. 14, 2015) (in case involving Mississippi law, refusing to infer disparagement from allegation that one party "'induced . . . third parties not to enter into or continue their' relationship" with another party because the complaint "never claimed that the inducement resulted from disparagement, as opposed to other strategies such as price cuts, personal service, or any other aspects of the services offered by the inducer").

    Second, Uretek suggests that Applied's Lanham Act counterclaim *per se* falls within the scope of the Policy, by virtue of being a Lanham Act claim. According to Uretek, *any* claim asserted under the Lanham Act necessarily satisfies the Policy's enumerated offenses of "use of another's advertising idea in your "advertisement'" and/or "[i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement,'" because these types of ills are redressable under the Lanham Act. (Doc. No. 17, at 10-11 (quoting Doc. No. 17-1, at 20).) The argument impermissibly directs the Court's attention to the legal theories alleged by Applied

5

rather than the factual allegations underlying Applied's claimed damages. *Evanston*, 645 F.3d at 745. Applied's decision to sue under the Lanham Act, as opposed to any other legal theory, has no bearing on whether Continental owed Uretek a duty to defend. The relevant question is whether the factual allegations underlying Applied's Lanham Act claim correspond to the Policy's coverage of claims asserting "personal and advertising injury." As discussed above, they do not. Applied sought relief under the Lanham Act based on misleading statements perpetuated in the marketplace regarding the scope of the '831 Patent. Nowhere did Applied allege that Uretek had wrongfully appropriated Applied's advertising idea, copyright, trade dress, or slogan, and the Policy's coverage of such claims is irrelevant.

Finally, Uretek attempts to shoehorn Applied's factual allegations into the Policy's language that "personal and advertising injury" could arise out of "[t]he use of another's advertising idea in your 'advertisement.'" (Doc. No. 17, at 11-12 (quoting Doc. No. 17-1, at 20).) As phrased by Uretek: "One of Applied's contentions in the underlying case was that Uretek wrongfully used Applied's advertising idea—i.e., that Applied's processes and services were not the same as Uretek's and did not violate the '831 patent—by claiming the opposite to specified markets for the purpose of attracting customers away from Applied." (*Id*. at 12.) The Court notes the creativity of the argument, but disagrees that Uretek's or Applied's communications to customers regarding the scope of the '831 Patent can be characterized as "advertisements,"[1] or that the parties' stated positions on the scope of the '831 Patent can be characterized as "advertising ideas."

---

[1] The Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." (Doc. No. 17-1, at 18.) Nothing in Applied's countersuit suggests that Uretek broadcast or published material regarding the '831 Patent, beyond targeted communications to specific contracting authorities.

### III.     CONCLUSION

For the reasons stated above, Continental did not owe Uretek a defense to the counterclaims asserted in the Applied Countersuit. Uretek's claims for declaratory judgment, breach of contract, and bad faith necessarily fail in the absence of a duty to defend. The Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 20) and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 17).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the seventeenth day of February, 2015.

*/s/ Keith P. Ellison*

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE